UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IRAN DARIO PEREZ,<br>Plaintiff<br>v.<br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br>Defendant. | Case No. 2:17-cv-01798-GJS<br><br>**MEMORANDUM OPINION AND ORDER** |

## I. PROCEDURAL HISTORY

Plaintiff Iran Dario Perez ("Plaintiff") filed a complaint seeking review of Defendant Commissioner of Social Security's ("Commissioner") denial of his application for Disability Insurance Benefits ("DIB"). The parties filed consents to proceed before the undersigned United States Magistrate Judge [Dkts. 11, 12] and briefs addressing disputed issues in the case [Dkt. 20 ("Pltf.'s Br."), Dkt. 21 ("Def.'s Br."), and Dkt. 22 (Pltf.'s Reply).] The Court has taken the parties' briefing under submission without oral argument. For the reasons discussed below, the Court finds that the Commissioner's decision should be affirmed.

## II. ADMINISTRATIVE DECISION UNDER REVIEW

On December 24, 2013, Plaintiff filed an application for DIB, alleging that he became disabled as of November 15, 2013. [Dkt. 16, Administrative Record ("AR")

147-151.] The Commissioner denied his initial claim for benefits on April 10, 2014, and upon reconsideration on July 21, 2014. [AR 10, 64-74, 76-90.] On February 26, 2016, a hearing was held before Administrative Law Judge ("ALJ") Robin Rosenbluth. [AR 29-63.] On March 24, 2016, the ALJ issued a decision denying Plaintiff's request for benefits. [AR 10-26.] Plaintiff requested review from the Appeals Council, which denied review on January 4, 2017. [AR 1-4.]

Applying the five-step sequential evaluation process, the ALJ found that Plaintiff was not disabled. *See* 20 C.F.R. §§ 404.1520(b)-(g)(1). At step one, the ALJ concluded that Plaintiff has not engaged in substantial gainful activity since November 15, 2013, the alleged onset date. [AR 12.] At step two, the ALJ found that Plaintiff suffered from the following severe impairments: epilepsy (seizures), anxiety, and depression. [*Id.* (citing 20 C.F.R. § 404.1520(c)).] Next, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. [AR 13 (citing 20 C.F.R. Part 404, Subpart P, Appendix 1; 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526.]

The ALJ found that Plaintiff had the following residual functional capacity (RFC):
> [Plaintiff] has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: he cannot climb ladders, ropes of scaffolds. He cannot be around unprotected heights, exposed to hazardous moving mechanical parts, or operate a motor vehicle. In addition, he is limited to performing simple, routine, and repetitive tasks but not at a production rate pace. He is limited to simple work-related decisions. He can have occasional interaction with supervisors and only incidental contact with the public and coworkers.

[AR 15.] Applying this RFC, the ALJ found that Plaintiff was unable to perform his past relevant work, but determined that based on his age (41 years old at the date of application), high school education, and ability to communicate in English, he could

perform representative occupations such as linen room attendant (DOT 222.387-030), office helper (DOT 239.567-010), and assembler, small products (DOT 706.684-022), and, thus, is not disabled. [AR 20-21.]

### III. GOVERNING STANDARD

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial evidence; and (2) the Commissioner used correct legal standards. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation and quotations omitted); *see also Hoopai*, 499 F.3d at 1074. The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

### IV. DISCUSSION

Plaintiff first contends that the evidence does not support the ALJ's determination that he is able to perform work as a linen room attendant (DOT 222.387-030, medium, Specific Vocational Preparation ("SVP") 2), office helper (DOT 239.567-010, light, SVP 2), or assembler of small products (DOT 706.684-022, light, SVP 2). [Pltf.'s Br. at 5-11.] At the hearing, the VE testified that his opinion that a hypothetical person with Plaintiff's limitations could perform these jobs and this opinion was consistent with the DOT and the Selected Characteristics of Occupations (SCO). [AR 62.] The Commissioner concedes that there was an apparent unresolved conflict between the Vocational Expert's ("VE") testimony and the DOT description for the assembler of small products. [Def.'s Br. at 7, fn. 2.]

3

Thus, the Court will address the remaining two positions.

### A. The ALJ's Step Five Finding

#### 1. Linen Room Attendant

Plaintiff contends the ALJ erred by failing to resolve an apparent conflict between the VE's testimony that a limitation to simple, routine and repetitive tasks and simple work-related decision is consistent with the demands of Level 3 reasoning, as required by the linen room attendant position. [Pltf.'s Br. at 5-7.]

At step five, the ALJ has the burden of establishing, through the testimony of a VE or by reference to the Medical-Vocational Guidelines, that the claimant can perform alternative jobs that exist in substantial numbers in the national economy. *See Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999). The Commissioner "routinely relies" on the DOT "in evaluating whether the claimant is able to perform other work in the national economy." *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990); *see Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) ("[T]he best source for how a job is generally performed is usually the [DOT]."). Should an "apparent or obvious" conflict arise between a VE's testimony regarding the claimant's ability to perform alternative jobs and the DOT's description of those jobs, the ALJ must ask the VE "to reconcile the conflict" and must determine whether the VE's explanation is reasonable before relying on the VE's testimony. *Gutierrez v. Colvin*, 844 F.3d 804, 807-08 (9th Cir. 2016); *see also Massachi v. Astrue*, 486 F.3d 1149, 1153-54 (9th Cir. 2007) (stating that "neither the [DOT] nor the [VE] evidence automatically trumps when there is a conflict," and that the ALJ must determine whether a conflict exists, whether the VE's explanation for the conflict is reasonable, and whether a basis exists for relying on the VE rather than the DOT); *see also* Social Security Ruling ("SSR") 00-4P, 2000 WL 1898704, at *2 ("When there is an apparent unresolved conflict between [vocational expert] evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the [VE] evidence to support a determination or decision

4

about whether the claimant is disabled."). The ALJ's failure to resolve such a conflict may preclude a reviewing court from determining whether the ALJ's decision is supported by substantial evidence. *See Massachi*, 486 F.3d at 1154 (stating that "we cannot determine whether the ALJ properly relied on [the VE's testimony]" due to the ALJ's failure to address conflicts with the DOT).

Here, an apparent conflict exists between Plaintiff's limitation to simple, routine and repetitive tasks and simple work-related decision and the Level 3 reasoning requirement of the linen attendant position. *See Zavalin v. Colvin*, 778 F.3d 842, 846-47 (9th Cir. 2015) (holding that the ALJ erred in failing to resolve the apparent conflict that existed between the ALJ's finding that the claimant retained the RFC to perform "simple, routine, or repetitive work" and the Level 3 reasoning requirements of the alternative cashier and surveillance system monitor jobs that the ALJ found the claimant capable of performing).

The Commissioner contends that any error here was harmless; noting that the Ninth Circuit in *Zavalin* engaged in a harmless error analysis before determining that the ALJ's failure to address the DOT conflict between an RFC for simple and repetitive work and a Level Three Reasoning job was reversible error. [Def.'s Br. at 2.] In *Zavalin*, the court assessed whether the error was harmless by considering the DOT's descriptions of the jobs at issue—cashier and surveillance system monitor—in relation to the evidence that the ALJ relied on to assess the claimant's abilities. *See Zavalin*, 778 F.3d at 848. The Commissioner in *Zavalin* argued the error was harmless because the claimant's success in math classes and his use of computer and video games demonstrated that he was capable of performing the jobs. *Id.* The Ninth Circuit disagreed. *Id.* First, the court noted that the claimant's math classes were part of a special education program. *Id.* Indeed, the claimant had graduated high school only with "a modified diploma" conferred on students who were unable to satisfy the standard educational requirements. *Id. at 847.* Second, the Court determined that it could not rely on evidence of video game and computer use

5

because the ALJ had not relied on it. *Id.* at 848 (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006)).

The Commissioner attempts to distinguish this case from *Zavalin* by pointing out that Plaintiff completed high school without "special accommodation." [Def.'s Br. at 3.] While this fact may be relevant to the inquiry, it is clearly insufficient to show whether he can perform jobs that require Level 3 reasoning. The Court in *Zavalin* stated that "there is no rigid correlation between reasoning levels and the amount of education that a claimant has completed." *Zavalin*, 778 F.3d at 847. This is because the reasoning levels do not correspond only to a claimant's education level; rather, they "correspond to the claimant's ability because they assess whether a person can 'apply' increasingly difficult principles of rational thought and 'deal' with increasingly complicated problems." *Id.*

The Commissioner also attempts to distinguish this case from *Zavalin* by pointing out that Plaintiff had previous work experience as a waiter (which the DOT classifies as requiring Level 3 reasoning) and Plaintiff's ability to navigate public transportation, watch movies, dine, and go to the beach, demonstrate that he could perform a Level 3 reasoning job. [Def.'s Br. at 3 (citing AR 36-39, 59-60, 188-189, 191).] However, since the ALJ did not rely on this evidence to support her deviation from the DOT at step five, this court cannot find harmlessness based on such evidence. *See Zavalin*, 778 F.3d at 848 (holding that since the ALJ did not rely on the claimant's use of the computer and video games to reconcile the apparent conflict between the claimant's RFC and the ALJ's finding that the claimant could perform a Level 3 reasoning job, "we cannot do so now to find the error harmless") (citing *Stout*, 454 F.3d at 1054 ("[I]f the Commissioner's request that we dismiss the ALJ's error as harmless invites this Court to affirm the denial of benefits on a ground not invoked by the Commissioner in denying the benefits originally, then we must decline.")); *see also Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1003-1004 (9th Cir. 2015) (holding that since an apparent conflict existed between the

6

claimant's RFC, which "limits her to performing one-and two-step tasks," and "the demands of Level Two reasoning," and since there was "no explanation in the record as to why the VE or the ALJ may have believed that [the claimant's] specific limitation to 'one to two step tasks' should not be taken at face value," the record did "not support a conclusion that the ALJ's failure to resolve this apparent conflict was harmless error," and the court "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision") (quoting *Zavalin*, 778 F.3d at 848). Thus, the ALJ erred in finding Plaintiff could do the job of linen room attendant and the Court cannot conclude that the ALJ's error was harmless.

### 2. Office Helper

Next, Plaintiff contends the ALJ erred by failing to resolve an apparent conflict between the VE's testimony that Plaintiff could perform work as an office helper, which the DOT classifies are requiring the ability to talk and hear occasionally (up to one-third of the workday) and the social interaction restrictions set forth in the RFC. [Pltf.'s Br. at 7-10.] Specifically, the RFC limits Plaintiff to occasional interaction with supervisors and incidental contact with the public and coworkers. [AR 15.]

According to the DOT, the duties of an office helper may include: furnishing other workers with clerical supplies; distributing and collecting mail; delivering oral or written messages; delivering items to other business establishments; delivering mail, messages, documents and packages between departments of establishment; and delivering stock certificates and bonds within and between stock brokerage offices. *See* DOT 239.567-010, 1991 WL 672232. However, nothing in the DOT description suggests that communication with coworkers and the public is necessarily part of the job. In fact, the DOT describes the "Speaking-Signaling" component of the job as "Not Significant." *See* DOT 239.567-010, 1991 WL 672232. Plaintiff cites no authority for his assertion that an office helper job necessarily requires more than incidental contact with the public and coworkers. As

the Ninth Circuit has recognized, each DOT job description refers to occupations, not specific jobs, and lists the *maximum requirements* of the jobs as generally performed. *See Gutierrez v. Colvin*, 844 F.3d 804, 807 (9th Cir. 2016). Thus, not all tasks listed in the job description necessarily apply to every officer helper job. *See id.* at 808 ("While the ability to read, write, and follow assembly instructions [listed in the DOT job description for cashier] may roughly correlate to the aptitude necessary to perform some cashiering jobs, those abilities aren't necessarily essential for most cashiers."). Here, the VE testified that all of the jobs he identified, including officer helper, involved "no public contact…[no] team work…. [and] minimal or superficial contact with coworkers." [AR 61.] Thus, there is nothing in the record to suggest that the interaction with coworkers and the public required of the office helper job would be in excess of Plaintiff's RFC limitation for incidental interaction with coworkers and the public. As such, the Court finds no conflict between the DOT and the VE's testimony that someone with Plaintiff' limitations can perform the job of office helper. Because the ALJ did not err in finding Plaintiff could perform the job of officer helper, Plaintiff's ability to perform that job is sufficient to support the ALJ's step-five finding.[1] [AR 42-43, 72.] Accordingly, even though the ALJ erred in finding Plaintiff could perform the jobs of linen room attendant and small products assembler, the error was harmless. *See Carmickle*, 533 F.3d at 1162; *see also Gallo v. Comm'r of Soc. Sec. Admin.,* 449 F. App'x 648, 650 (9th Cir. 2011) (holding that "[b]ecause the ALJ satisfied his burden at Step 5 by relying on the VE's testimony about the [a]ddresser job, any error that the ALJ may have committed by relying on the testimony about the 'credit checker' job was harmless.").

///

---

[1] The VE testified that approximately 200,000 office helper jobs existing nationally. [AR 61.]

8

**B. The ALJ's Mental Residual Functional Capacity Findings**

Next, Plaintiff contends that the ALJ erred in assessing Plaintiff's mental limitations. Specifically, Plaintiff asserts that the mental limitations listed in the RFC are flawed because they were based on the opinions of state agency physician, JoAnne Coyle, Ph.D., and consultative examiner, Stephan Simonian, M.D., whose opinions predate "evidence of rather bizarre behavior" reported by Plaintiff's treatment providers. [Pltf.'s Br. at 13.]

First, the RFC was not based solely on Dr. Coyle's and Dr. Simonian's opinions. Rather, while the ALJ gave these opinions significant weight, the ALJ reasonably assessed an RFC with limitations that *exceeded* these medical opinions after reviewing the entire medical record. *See* 20 C.F.R. § 404.1527(d)(2) ("Although we consider opinions from medical sources on these issues such as…your residual functional capacity…the final responsibility for deciding these issues is served to the Commissioner."). Notably, Dr. Coyle found Plaintiff to be "not significantly" limited in his "ability to work in coordination with or in proximity to others without being distracted by them" and found no social interaction limitations. [AR 88.] Similarly, Dr. Simonian did not identify any limitations in Plaintiff's ability "to relate to and interact with supervisors, co-workers, and the public." [AR 385.] Dr. Simonian also opined that Plaintiff could handle detailed and complex instructions. [*Id.*] The ALJ disagreed and "recognize[d] [Plaintiff] suffers from anxiety and limit[ed] him to work involving simple, routine, and repetitive tasks along with only incidental contact with the public and co-workers." [AR 18.] Thus, Plaintiff's argument that the mental limitations portion of the RFC is based solely on the opinions of Dr. Coyle and Dr. Simonian is without merit.

Second, Plaintiff fails to explain how the records of "bizarre behavior" support a finding that the ALJ erred in assessing the RFC. Plaintiff points to several medical notes to support his position. First, Plaintiff points to an April 2014 note

indicating that Plaintiff was very emotional and cried when providing his medical history. [AR 279.] A few months later, in August 2015, an emergency room note reported that Plaintiff states, "he can no longer work over the last year because of his severe depression." [AR 404.] A September 2015 treatment note described "various vague threats [Plaintiff made to] his doctors [that they] would be responsible if he 'snapped' due to the stress of having to go back to work" and Plaintiff's assertion "that he needs social security." [AR 17 (quoting AR 463).] An October 2015 treatment note described Plaintiff's "anxiety issues related to finances and disability [which Plaintiff said] 'push [him] to the dark side.'" [AR 17 (citing AR 606).] However, Plaintiff denied having any plan for suicidal or homicidal ideation and he was described as being oriented to person, place, and time, with normal mood and affect, and normal behavior. [*Id.* (citing AR 602-603).] In November 2015, Plaintiff expressed homicidal and suicidal ideation, but stated that he had no plan. [AR 610.] At that appointment, Plaintiff "became agitated…while discussing disability criteria," requested return of a knife that medical staff had confiscated, and cursed at his treatment provider, exclaiming, "[y]ou don't care about me either." [AR 610.] Subsequently, Plaintiff requested to see another neurologist and Plaintiff's doctor, Christianne N. Heck, M.D., noted in an email about Plaintiff's "threats" at the last visit, that "[i]f [Plaintiff] is [attempting] to manipulat[e], we should probably not allow him to change [doctors]." [AR 459.] Thus, far from showing that Plaintiff's behavior reflected a legitimate deterioration in his mental condition, as Plaintiff implies, these records show that at least one of Plaintiff's treatment providers noticed a connection between his behavior and his disability application and were concerned that he was trying to manipulate his care and create a record more favorable to a finding of disability. In fact, all of the medical notes that Plaintiff cites are for doctor visits that occurred after he filed his disability application, with the exception of the April 2014 medical note. Plaintiff "acknowledges the context of some of his bizarre behavior involved []his claim for

benefits." [Pltf.'s Br. at 14.] Thus, the Court finds that substantial evidence supports the ALJ's assessment of Plaintiff's RFC. This issue also does not warrant remand.

## V. CONCLUSION

For all of the foregoing reasons, **IT IS ORDERED** that the decision of the Commissioner finding Plaintiff not disabled is AFFIRMED.

**IT IS SO ORDERED.**

DATED: June 29, 2018

_____
GAIL J. STANDISH
UNITED STATES MAGISTRATE JUDGE